Good morning, your honors. May it please the court, Ben Wiesinger on behalf of the petitioner Elvia Velasquez-Martinez. Your honors, this matter needs to be remanded for two reasons. First, the Mendez-Rojas class and then the court's decision in Diaz-Reynoso v. Barr from last summer. And I'll address the Mendez-Rojas class issue first because it was an issue raised by the court last week. Specifically, whether the government agencies have basically the ability or the legal authority to ignore the one-year deadline. I would submit to the court that that is not what the government agreed to do in the Mendez-Rojas settlement. They did not agree to not enforce the statutory deadline. What they agreed to do was restart the one-year clock so that once adequate notice is provided to a potential applicant, that starts the one-year deadline. And then if, after providing adequate notice, the applicant still fails to file within a year, that applicant is barred. And I would point the court to... Can I start just so I understand the timeline? I was struggling with the timeline here. So when Velasquez-Martinez was before the BIA, there was no settlement agreement, right? The district court had issued a summary judgment order. But then I think at the point when she was before the BIA, that had been stained, isn't that correct? So the district court stained the summary judgment order in order to allow the parties to have settlement negotiations. So what was the status based on the timeline when Velasquez-Martinez was before the BIA? You're correct, Judge Akuda. The district court's order was stayed while the government sought appeal. And so the issue of whether my client was a class member of Mendez-Rojas was not before the board at all, that I can tell. And so the settlement agreement wasn't actually finalized until after your client's reply brief had already been submitted here, right? So it was fairly recent based on my review of the timeline. Correct. So the settlement agreement is after she had completed her briefing before us. Yes, that is accurate, Your Honor. Okay, so we're looking at the BIA's decision. And the BIA's decision, when it reached its conclusion, there was really no binding requirement imposed on the government. Is that correct? That's correct. Well, that's correct that that's not in the BIA's decision. There was no settlement agreement and the order before the district court had been stayed. So at the time of the BIA's decision, there wasn't any requirement imposed on the government or otherwise. That's correct, Your Honor. Thank you. The settlement agreement, however, is retrospective. And it applies to any applications for asylum filed on or before March of 2022, if I'm not mistaken. And it applies retroactively to anybody who was a class member. And there's no real dispute that my client is a B2 subclass member. And so what does the government say? Okay, so a settlement agreement was entered into after the BIA has moved. And so after the petition for review was fully briefed. And so now there is a settlement agreement. And I assume that you would be in discussions with the government about going forward. Does that have any effect on our review of the BIA's decision, which was taken long before the settlement agreement was finalized? Yes, Your Honor. It means that we have to remand if for no other reason than to apply Mendez Rojas and reanalyze my client's claim as an application for asylum. Not just withholding and a cap. Okay, so did you bring a motion to reopen? I mean, it seems like this is totally past events. I'm a little puzzled about the procedural posture and why we would remand when the BIA made no error. So the BIA's decision at the time was correct. And the appeal didn't even reference the settlement agreement had been finalized. And I guess that's why it wasn't in the records. So I'm just confused about the procedural posture here. Your Honor, the issue about the one-year bar was raised in briefing to the board. Well, can the BIA, the BIA wouldn't have any authority to say the INA is unconstitutional, right? I mean, that was essentially what the district court said. The district court said that as applied here, the one-year, as applied to this class, the one-year timeframe for asylum was unconstitutional. But we've held that the BIA can't determine the unconstitutionality of its own statute. Yes, that's correct. And whether it's a separate motion to reopen, filed to the board, or simply an agreement to remand to the board on this issue, I don't think makes any procedural difference. I don't think it makes any difference to this court's ultimate decision. This case has to go back to the board for reconsideration of my client's application without the one-year bar being applied to her. Turning to matter of AB and Diaz-Reynoso, in this case, the board did the same thing that the board did in the case before the Diaz-Reynoso court. They said, essentially, well, matter of AB applies, and this social group is infamously circular. The BIA didn't apply the rigorous social group analysis, and Diaz-Reynoso— Did your client submit any evidence or make any arguments about a narrowing characteristic of her proposed group other than being persecuted? Her feminine gender identity is one. So she said she was female, and she was a victim of violence. Did she further particularize the group of females other than by the harm that she had suffered? Yes and no, Your Honor. Yes, in the sense that my client claims that simply being female is an immutable characteristic. And we submitted a plethora of evidence that being female in Honduras automatically, just by virtue of your birth, puts you at a much more significant risk of violence. So, with that— Was there a narrowing characteristic—I mean, immutable characteristic of being a woman, narrowing characteristic other than the risk of being persecuted? The experience of gender-based violence, yes, Your Honor. Okay, thank you. I'll reserve the rest of my time for rebuttal. Thank you. All right. Ms. Prem? Yes. Good morning, Your Honors. Can you hear me? We can. Okay, great. May it please the Court, Sharice Pratt for the respondent, the acting United States Attorney General. First, I will address the Court's three questions, and then I'll explain why Ms. Velazquez's claims fail. So, as Ms. Velazquez mentioned, that there is a mechanism in place for establishing membership in the Mendez-Rojas class. If she believes she's a member of the class, her remedy would be to file a motion to reopen. If she's not satisfied with the outcome of a motion to reopen, she would file a new PFR and seek judicial review in this Court. But she must first avail herself of the remedy, and she has not exhausted her claim. Therefore, it is not properly before the Court. And I don't believe that the failure to give Ms. Velazquez individualized notice of the one-year statutory filing deadline violated her due process rights. She has a remedy, and it looks like she has availed herself of it. And the remedy is set forth right in the settlement agreement on pages 8 and 9, paragraph 5. But even if she files a motion to reopen, and even if her asylum application is ultimately barred, she cannot show that she is prejudiced. Because she still has to show that the particular social group that she set forth before the immigration judge is cognizable, and that there is a nexus to a protected ground. Let me ask you about what we do about this case. As I asked opposing counsel, the BIA didn't have any requirement before it, either an order or a settlement agreement to consider. And so opposing counsel says we should remand what the BIA reconsidered in light of the settlement agreement. And your suggestion is no, we affirm the BIA, and that petitioner has to file a new motion to reopen or a new petition for rehearing? Yes, if she believes that she is a member of that class, then she has to use the mechanism provided in that settlement agreement, which is to file a motion to reopen before the board and let them determine if she is a member of the class. I'm sorry for interrupting. Before the BIA, she did assert membership in the class. So why can't we, instead of having her do a motion to reopen, send it back for the BIA to consider whether she in fact is a member of the class? Because she did assert that before the BIA, and the BIA didn't address it. So, right. The board's decision was issued in September 2019, and I don't believe that the settlement agreement was fully finalized until after that. And so now there is a settlement agreement in place that's been adopted by the district court, and she has a mechanism in place to follow if she believes she's a member of the class. It's inappropriate for her to bring the claim here when she hasn't followed the procedure set forth in the settlement agreement. If I may move on to the impact of Diaz-Reynoso. Diaz-Reynoso states that the mentioning of the persecutory action in the particular social group does not necessarily defeat an otherwise cognizable group. They must share a narrowing characteristic. That has no impact on this case, because the agency analyzed her claims, both with respect to their finding that it was not cognizable, and alternatively, assuming it was cognizable. Now, the group she set forth was female victims of gender-based violence or female victims of violence. And the board cites to the IJ's decision, the board on page four cites to the IJ's decision on page 63 of the CAR, that the IJ found that it was certainly immutable, but it was circularly defined by harm and not socially distinct in Honduras. Therefore, they found it was not cognizable, because it did not exist independently of the harm asserted. Now, the agency credited her testimony that she was kidnapped, beaten, and raped. And then they said, assuming that her particular social group was cognizable, there was no nexus. They found that it was violence by criminals, because the kidnappers didn't just kidnap two women, they kidnapped four men. And the men were beaten, and the women were beaten and raped. What's the authority, counsel, do we have to limit the nexus determination to the point at the kidnapping, rather than what occurred while kidnapped? Well, so, well, if you're looking at her claims, she claims that they never actually threatened to traffic her, that she just assumes that. That's at the CAR on page 99. They have only threatened to kill her if she reported the harm. It was sexually assaulted and the men weren't. There were two females and four males kidnapped together. Only the women were sexually assaulted. Right, but the reason that her sexual assault is not the reason that she's claiming that she came to the United States. She's claiming because they threatened to kill her if she reported the crime. And the person who threatened to kill her is not her rapist. She says that on, she said she recognized one kidnapper, that's on CAR page 89 and 90, and he threatened to harm her if she reported the crime to authorities. And she says that in her asylum application, page 325. Then she says, in her testimony, he was not the man who raped her and fathered her child, pages 92 to 93. So from her testimony, she's saying that the reason, and the letter from the person, the other woman who was kidnapped, also says that she had to come to the United States because they threatened to kill her if she reported the crime. That's at CAR 335. The threat caused her to leave the United States. It was never a threat to put her into trafficking or prostitute her. She speculates that. And that's on page 95. She speculates that that would have been the motive. And then even if it was the motive to traffic her, that is to get money if they want to sell her into prostitution. So it's not about the rape at all. If you look at her similarly situated friend, the friend is still unharmed in Honduras. So the agency appropriately found there was no nexus. And looking at the government acquiescence to torture, she never reported the crime, so the government couldn't help her, couldn't find those kidnappers. Assuming that we find a nexus in this case, that we don't agree with your analysis as the nexus, does Diaz-Renoso dictate a remand in this case? It does not because the agency analyzed it under both. They looked at the particular social group. All that applies in Diaz-Renoso is that if you mention the harm in the particular social group, it does not necessarily defeat an otherwise cognizable group. And that they must share a narrowing characteristic. They don't cite any case that has found that females are a PST, a particular social group. There's no case law in this circuit or any other circuit that says the whole entire population of females in Honduras is a particular social group. And if you're looking at her threat, which was the threat that they were going to kill her if she told, they also threatened to kill the other five. Everyone was threatened with death. Yes, she was raped, but rape was not the reason why she felt she had to flee Honduras. She felt she had to flee Honduras because they were threatening to kill her if she reported the kidnapping. And again, the person who was threatening to kill her, she admits, is not the one who raped her. So, if the court has no other questions, I would stand on the brief. Thank you, counsel. We'll go to Bob. To pick up where my colleague left off, Perdomo versus Holder is what this court's precedent is for the prospect that all women in a particular country can be a particular social group. Their gender is their defining characteristic. I look at my colleagues. That's a woman.  That's a woman. It was Perdomo that came before MEBG in those cases, right? So, it's really been superseded by Ray Ace and our reference to the BIA's determination that there has to be particularity in a narrowing characteristic. Indeed. The narrowing characteristic is found in the record here. Over the last 20 years, various committees and commissions have been formed and laws have been passed and special prosecutors set up with the noble goal of reducing, if not ending, gender-based violence. And yet, still, it continues with near-utter impunity. And I'd point the court to the Herman's-Dorfer affidavit in AR 29 through 30 and 34. The Honduras government itself, that society considers abused women and women of victims of domestic violence and gender-based violence to be worthy of special protection and yet is still unable to provide it. With that said, your honors, I would like to note for the record that my office has been pro bono on this appeal to this honorable court. I will submit that this court should remand the record to the BIA. Thank you. Thank you for your pro bono representation. And I want to thank both counsel for agreeing to move the argument from tomorrow to today. It helped us in our calendar management. So thank you again. The case that's argued will be submitted for decision and will be in recess for the morning. Thank you.
judges: Thomas, Ikuta, Nguyen